IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JPAY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1492-E |
| | § | |
| LONNIE BURTON and | § | |
| MICHEAL LINEAR, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The Court has an obligation to examine its subject-matter jurisdiction *sua sponte* at any time. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999 ) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). On March 30, 2023, the Court issued an Order that: (1) stayed and administratively closed this case; (2) informed the Parties that the Court had concerns with Plaintiff JPay, LLC's ("Plaintiff") jurisdictional allegations—specifically, those relating the 28 U.S.C. § 1332's amount-in-controversy requirements; and (3) ordered Plaintiff to provide supplemental briefing on the amount-in-controversy issue. (ECF No. 31). On April 21, 2023, Plaintiff filed its Response to the Court's March 30, 2023 Order (the "Supplemental Briefing"). (ECF No. 32).

For the reasons discussed below, the Court concludes that Plaintiff has not established that the amount-in-controversy requirement for diversity jurisdiction under § 1332 has been met. Therefore, the Court **DISMISSES this case without prejudice for lack of subject-matter jurisdiction**. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (federal court has no power to adjudicate claims where subject-matter jurisdiction does not exist and,

consequently, must dismiss the action); Fᴇᴅ. R. Cɪᴠ. P. 12(h)(3) (court must dismiss action if it determines at any time that subject-matter jurisdiction is lacking).

## I.   Bᴀᴄᴋɢʀᴏᴜɴᴅ

This case arises out of a dispute involving arbitration. On July 11, 2022, Plaintiff filed this case in federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (ECF No. 1). Plaintiff sued Defendants Lonnie Burton and Michael Linear (collectively, "Defendants"), seeking to stay on-going arbitration proceedings between Plaintiff and Defendants. (*See* ECF No. 1, pg. 8). On July 12, 2022, the Court issued an Order requiring Plaintiff to file an amended complaint with additional allegations regarding Plaintiff's basis for invoking diversity jurisdiction. (ECF No. 5). That same day, Plaintiff filed an Amended Complaint for Declaratory Judgment and Injunctive Relief (the "Amended Complaint"), which added jurisdictional allegations but did not include any other changes. (ECF No. 6).

As pleaded, Plaintiff provides communications and media products and services to inmates in the Washington State Department of Corrections. (ECF No. 6-2, pg. 3). In its Amended Complaint, Plaintiff alleges that Defendants are users of Plaintiff's services, and, prior to using those services, accepted Plaintiff's Terms of Service and Warranty Policy (the "Agreement"). (ECF No. 6, pg. 2). The Agreement contains an arbitration provision and a class action waiver. (*See* ECF No. 6-1, pgs. 10-13). On May 22, 2020, Defendants filed a complaint in Washington state court, alleging various violations of Washington state law; Defendants amended their state court pleading on October 31, 2020. (ECF No. 6, pg. 3) (*See generally* ECF No. 6-2). Defendants' complaint in Washington state court includes class claims and allegations. (ECF No. 6-2, pgs. 18-20, 23). Plaintiff filed a motion to compel arbitration in Washington state court, seeking to compel arbitration of Defendant's claims. (ECF No. 6, pg. 3). The Washington state trial court granted

Plaintiff's motion to compel arbitration and compelled Defendants to bring their claims in individual arbitration pursuant to the Parties' arbitration agreement. (ECF No. 6-3, pg. 3). Defendants appealed the Washington state trial court's order, but on June 2, 2021, the Court of Appeals for the State of Washington, Division II, denied Defendant's motion for discretionary review. (ECF No. 6-4, pg. 6).

On January 14, 2022, each Defendant filed a demand for arbitration with the American Arbitration Association (the "AAA"). (ECF No. 6, pg. 4). In their identical arbitration demands, Defendants state:

> This case was initially filed in superior court. The amended complaint is attached and sets forth claimant's assertions against JPAY. Claimant challenged the arbitration and the class action waiver as unconscionable, as well as the delegation of unconscionability of those clauses to arbitration. JPAY prevailed on that issue and claimant's unconscionability arguments are remanded to arbitration. Claimant seeks to invalidate the arbitration and class action waiver in this consumer arbitration. Claimant does not seek class arbitration, however; claimant's substantive allegations of fact and claims are as set forth in the amended complaint which is attached hereto and incorporated by reference.

(ECF No. 6-5, pg. 2; ECF No. 6-6, pg. 2). Defendants each sought "50,000,00 [sic]" in damages.[1] Plaintiff then filed suit in this Court based on diversity jurisdiction pursuant to the Agreement's forum selection clause, seeking: (1) declaratory judgment that the arbitrators in Defendants' respective arbitration proceedings are "without power to hear any challenges to the class action waiver;" (2) declaratory judgment that "the class action waiver is enforceable and that Defendants must submit their claims to individual arbitration;" (3) injunctive relief preventing "Defendants from challenging the class action waiver in an arbitral proceeding;" and (4) "an order staying the arbitration proceedings until this Court determines whether the class action waiver is enforceable." (ECF No. 6, pgs. 5-8). Plaintiff argues that the class action waiver (1) prohibits arbitrators from

---

[1] It is undisputed that this amount refers to $50,000.00 from each Defendant—not an amount exceeding $75,000.

determining the scope, validity, effect, or enforceability of the class action waiver and (2) vests this Court with the power to hear any challenges to the class action waiver. (ECF No. 6, pgs. 2-6).

On March 30, 2023, this Court issued an Order that: (1) stayed and administratively closed this case; and (2) pointed out a deficiency with Plaintiff's jurisdictional allegations in its Amended Complaint. (ECF No. 31). The Court advised Plaintiff that its Amended Complaint did not appear to adequately plead the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 31, pg. 3).  Specifically, the Amended Complaint alleges that "[c]omplete diversity of citizenship exists, and the amount in controversy exceeds $75,000, exclusive of costs and interests." (ECF No. 6, pg. 2). The Court's Order noted that—aside from (1) the Amended Complaint's assertion that the amount in controversy in this case exceeds $75,000 and (2) Plaintiff's allegation that each Defendant is seeking in arbitration $50,000 in damages—the Amended Complaint is otherwise devoid of factual allegations regarding the amount in controversy. (ECF No. 31, pg. 3). The Court's Order also noted that, because a single plaintiff may not aggregate claims against multiple defendants to satisfy the amount-in-controversy requirement under 28 U.S.C § 1332(a), the Court questioned whether it had subject-matter jurisdiction in this case. (ECF No. 31, pg. 3). The Court ordered Plaintiff to provide supplemental briefing on the amount-in-controversy issue. (ECF No. 31, pg. 4). Plaintiff filed the Supplemental Briefing on April 21, 2023. (*See* ECF No. 32).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has diversity jurisdiction over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which there is complete diversity of

citizenship between the parties. 28 U.S.C. § 1332(a). "The amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252–53 (5th Cir. 1998) (citations and quotation marks omitted). A court may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001).

Federal courts have the independent duty, at any level of proceedings, to determine whether they have subject-matter jurisdiction over a case. *Ruhrgas AG*, 526 U.S. at 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*; 408 F.3d 177, 182 n. 5 (5th Cir. 2005) (A "federal court may raise subject-matter jurisdiction *sua sponte*."). Subject-matter jurisdiction may not be waived. *See Ruhrgas AG*, 526 U.S. at 583. A federal court has no power to adjudicate claims where subject-matter jurisdiction does not exist and, consequently, must dismiss such claims. *Stockman*, 138 F.3d at 151; *see also* FED. R. CIV. P. 12(h)(3). Thus, the Court has an obligation to examine its subject-matter jurisdiction *sua sponte* at any time.  *See FW/PBS*, 493 U.S. at 230-31; *see also Ruhrgas AG.*, 526 U.S. at 583.

### III.  ANALYSIS

The party seeking the federal forum bears the burden of establishing subject-matter jurisdiction. *See St. Paul Reinsurance Co.*, 134 F.3d at 1253. Diversity of the parties' citizenship is not at issue here. Instead, as noted in the Court's March 30, 2023, Order, the Court's only concern here is whether Plaintiff has satisfied its burden to establish that the amount in controversy

---

in this case is sufficient for diversity jurisdiction under 28 U.S.C § 1332. In response to the Court's Order, Plaintiff argues that the value of its right to avoid arbitration with Defendants over the class action waiver exceeds the jurisdictional requirement. (*See generally* ECF No. 32). For the reasons discussed below, the Court is unpersuaded by Plaintiff's arguments.

As noted above, "[t]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co.*, 134 F.3d at 1252-53. Plaintiff urges the Court to assess the value of their requested relief by "'looking through [the pleadings before the Court] to 'the entire, actual controversy between the parties, as they have framed it.'" (ECF No. 32, pg. 4) (quoting *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 837-38 (8th Cir. 2013)). Specifically, Plaintiff argues that the Court should "look through" both the pleadings before the Court and the arbitration proceedings to the Washington state court petition to determine the amount in controversy in this case.

According to Plaintiff, the amount-in-controversy requirement is satisfied whether the Court looks to the value of Defendants' individual claims in arbitration or to the value of a theoretical class action in the event the arbitrators invalidate the class action waiver. (ECF No. 32, pg. 6). Plaintiff argues that the amount-in-controversy is satisfied for each Defendant individually because, while the Defendants demand only $50,000 in arbitration, their arbitration demands incorporate their Washington state court pleadings, which seek attorney's fees and treble damages under Washington state law, pushing their claims above $75,000. (ECF No. 32, pgs. 6-9) (citing to *Theriot v. Transamerica Life Ins. Co.*, 354 F. Supp. 3d 713, 719 (E.D. Tex. 2017) (holding that attorney's fees and treble damages provided for by state statute should be included in determining the amount in controversy) (additional citations omitted)). Alternatively, Plaintiff argues that the

---

MEMORANDUM OPINION AND ORDER                                      Page **6** of **26**

value of its claims for declaratory judgment and injunctive relief exceed the jurisdictional requirements because an adverse ruling on the Agreement's class action waiver could lead to class action litigation or arbitration, and the aggregate demand of such actions would exceed 28 U.S.C. § 1332(d)'s $5,000,000 threshold for class actions. (ECF No. 32, pgs. 5-6, 9-10) ("under the Class Action Fairness Act of 2005, the amount in controversy element should be measured by the value of the underlying claim and the 'value of all relief and benefits that could logically flow from the granting of declaratory judgment'") (quoting *Rasberry v. Capitol Mut. Fire Ins.*, 609 F. Supp. 2d 594, 601-602 (E.D. Tex. 2009)).

For the reasons discussed below, the Court is unconvinced by these arguments. The Court concludes that Plaintiff's proposed "look through" approach is not appropriate under these circumstances and pleadings. Here, the Court must determine whether the amount in controversy before this Court—not the underlying Washington state court—exceeds the statutory requirement. The controversy before the Court is specifically limited to the class action waiver—as agreed by the Parties in the Agreement. Accordingly, the value of Defendants' individual state law claims in arbitration is irrelevant for the purpose of assessing the amount in controversy. Moreover, aggregation of claims would be inappropriate because: (1) there is no putative class in the action before this Court; and (2) the Defendants are not seeking class arbitration in their respective proceedings. Consequently, the Court concludes that Plaintiff has failed to meet its burden of establishing the amount-in-controversy requirement for diversity jurisdiction. The Court addresses these considerations in turn below.

## A.    The "Look Through" Approach is Not Appropriate Here.

Plaintiff urges the Court to "'look[] through to the entire, actual controversy between the parties, as they have framed it'" to determine whether the amount in controversy between Plaintiff and Defendants satisfies the jurisdictional minimum. (ECF No. 32, pg. 4) (quoting *CMH Homes*, 729 F.3d at 837-38). The Court declines to do so for two reasons. First, the justification for the "look through" approach—the text of § 4 of the Federal Arbitration Act ("FAA")—is not relevant here. Second, even if the text of § 4 were to be relevant in this case, the Court is not persuaded the "look through" approach applies beyond the federal-question jurisdiction context in which the Supreme Court as applied it. The question of whether to apply the "look through" approach to § 1332's amount-in-controversy requirement is an issue of first impression in the Fifth Circuit. Considering that (1) the Fifth Circuit has reversed the sole district court ruling the Court can find applying the approach to diversity jurisdiction, and (2) no other circuits have joined the Eighth Circuit in applying the approach to the amount-in-controversy requirement, the Court is unconvinced that the "look through" approach is appropriate here.

Plaintiff asks the Court to adopt the approach of the Eighth Circuit in *CHM Homes, Inc. v. Goodner* and look through (1) the pleadings before the Court and (2) the arbitration demands before the arbitrators to assess the value of Plaintiff's requested relief. (ECF No. 32, pg. 4). In *CMH Homes*, the Eighth Circuit concluded that district courts considering petitions to compel arbitration under § 4 of the FAA may "look[] through [] arbitration petition[s] [] to state court complaint[s] to determine the amount in controversy." 729 F.3d at 838. [2] In doing so, the court

---

[2] There, the plaintiffs filed a putative class action against the defendants in state court and "stipulate[ed] that they did not seek more than $75,000 in damages individually or on behalf of any class member, and not more than $4,999,999 for the class, including attorney's fees, costs, and treble damages provided by statute." *CMH Homes*, 729 F.3d at 834. The defendants (1) removed the state court suit to federal court pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d), ("CAFA") and federal question jurisdiction, 28 U.S.C. § 1331, and (2) filed a petition in federal court to compel arbitration. *CMH Homes*, 729 F.3d at 834. The plaintiffs moved to remand the suit to state court and dismiss the petition to compel arbitration for lack of subject-matter jurisdiction. *CMH Homes*, 729 F.3d at 834. The district

---

extended the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). *CMH Homes*, 729 F.3d at 835-38. In *Vaden*, the Supreme Court held that district courts may "look through" a petition to compel arbitration under § 4 to the parties' "underlying substantive controversy" to determine whether federal-question jurisdiction is present under 28 U.S.C 1331. 556 U.S. at 62. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration **may petition any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28**, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). Relying on the text of § 4, the Supreme Court concluded that "[a] federal court may 'look through' *a § 4 petition* to determine whether it is predicated on an action that 'arises under' federal law[.]" *Vaden*, 559 U.S. at 62 (emphasis added). The Supreme Court explained:

> The phrase "save for [the arbitration] agreement" indicates that the district court should assume the absence of the arbitration agreement and determine whether it "would have jurisdiction under title 28" without it. *See* [*Discover Bank v. Vaden*, 396 F.3d 366, 369, 372 (4th Cir. 2005)] (case below). Jurisdiction over what? **The text of § 4 refers us to "the controversy between the parties."** That phrase, the Fourth Circuit said, and we agree, is most straightforwardly read to mean the "substantive conflict between the parties." *Id.*, at 370. *See also* [*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983)] (noting in dicta that, to entertain a § 4 petition, a federal court must have jurisdiction over the "underlying dispute"). . . .
>
> . . . .
>
> . . . [W]hen the parties' **underlying dispute arises under federal law**, the "look through" approach permits **a § 4 petitioner** to ask a federal court to **compel** arbitration without first taking the formal step of initiating or removing a federal-

---

court "looked through" the federal court suit to the state court suit and determined that: (1) there was no federal question jurisdiction over the state court suit; and (2) there was no diversity jurisdiction because the plaintiffs stipulated to damages less than the amount-in-controversy requirement. *CMH Homes*, 729 F.3d at 834. The Eighth Circuit found that the district court correctly looked through the federal complaint to the underlying state suit to determine the amount in controversy. *CMH Homes*, 729 F.3d at 837.

---

question suit—that is, without seeking federal adjudication of the very issue it wants to arbitrate rather than litigate.

*Vaden*, 559 U.S. at 62, 65 (emphasis added). In *CMH Homes*, the Eighth Circuit extended this holding to the amount-in-controversy requirement for diversity jurisdiction. 729 F.3d at 838.

The Court concludes that the "look through" approach is not appropriate here because this case does not involve a § 4 petition to compel arbitration. Of determinative importance to the Supreme Court's reasoning in *Vaden*, the Eighth Circuit's reasoning in *CMH Homes*, and the Fifth Circuit's reasoning in *ADT, L.L.C. v. Richmond*, 18 F.4th 149 (5th Cir. 2021) (reversing a district court's decision applying the "look through" approach to determine whether there was diversity of citizenship in the context of a § 4 petition), was the presence of petitions to *compel arbitration* under § 4 of the FAA in those proceedings. Those courts relied heavily on the text of § 4 in coming to their respective conclusions. *See Vaden*, 556 U.S. at 62 ("*The text of § 4 drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy.*") (emphasis added); *ADT*, 18 F.4th at 151 ("*Section 4 is clear: The only controversy that bears on our jurisdiction is the 'controversy between the parties.' 9 U.S.C. § 4. . . . Those 'parties' are only the parties to the suit to compel arbitration.*") (first and third emphases added); *CMH Homes*, 729 F.3d at 837 ("Nothing *in the text of § 4* or the rational of *Vaden* suggests that a court should look through differently to determine whether a case meets the amount threshold for federal jurisdiction under § 1332 [than they do to determine whether there is federal-question jurisdiction under § 1331].") (emphasis added).

Unlike those cases, the case before the Court does not involve a petition to compel arbitration under FAA § 4. Rather than seeking to compel arbitration, Plaintiff has filed suit to *stay* on-going arbitration proceedings. As Plaintiff concedes in its Amended Complaint, "the Federal Arbitration Act contains no explicit provision authorizing a federal court to stay on[-]going

arbitration[.]" (ECF No. 6, pg. 7). Nonetheless, Plaintiff urges the Court to expand *Vaden*'s—and, in turn, *CMH Home*'s—"look through" approach beyond actions involving § 4 petitions to compel arbitration.

The Supreme Court has specifically rejected the application of the "look through" approach beyond § 4 because the unique approach is justified only by the text of that provision. *See generally Badgerow v. Walters*, — U.S. — , 142 S.Ct. 1310, 1315-1322 (2022) (holding that the "look through" approach does not apply when a court determines whether it has federal jurisdiction over applications to confirm, vacate, or modify arbitral awards under § 9 and § 10 of the FAA). In *Badgerow v. Walters,* the Supreme Court explained:

> The federal "district courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). And the jurisdiction Congress confers may not "be expanded by judicial decree." *Kokkonen*, 511 U.S., at 377, 114 S.Ct. 1673. **Those bedrock principles prevent us from pulling look-through jurisdiction out of thin air . . . without textual support . . . . The look-through rule is a highly unusual one: It locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant to be. We recognized that rule in** *Vaden* **because careful analysis of Section 4's text showed that Congress wanted it applied to petitions brought under that provision.** *See* 556 U.S., at 62–65, 129 S.Ct. 1262. But Congress has not so directed in Sections 9 and 10. Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims, turning on different law, that (save for the parties' agreement) could have been brought in federal court. And **because a statutory basis for look-through jurisdiction is lacking here, we cannot reach the same result as in** *Vaden***: That would indeed be jurisdictional "expan[sion] by judicial decree."** *Kokkonen*, 511 U.S., at 377, 114 S.Ct. 1673.

*Badgerow*, 142 S.Ct. at 1318 (emphasis added).

There is no § 4 petition to compel arbitration before this Court. Thus, the entire rationale for looking through federal pleadings to underlying state court controversies in determining to determine whether federal jurisdiction exists—the text of the FAA—is not relevant here. Moreover, Plaintiff has not identified—nor has the Court found—any case in which a federal court

used *Vaden*'s "look through" to determine the amount-in-controversy requirement in an action to *stay* on-going arbitration proceedings. The Court declines Plaintiff's invitation to be the first court to do so because applying the "look through" approach "beyond [its] statutory basis" would be "jurisdictional expansion by judicial decree." *Badgerow*, 142 S.Ct. at 1318. (citations and internal quotation marks omitted) (alterations incorporated).

Alternatively, the Court would decline to apply the "look through" approach to the amount-in-controversy requirement even if § 4 was relevant to this case. Demonstrably, the Eighth Circuit is the only circuit that has extended *Vaden*'s "look through" approach beyond federal-question jurisdiction.[3] Plaintiff has not identified—nor has the Court located—any decision of a district court in this circuit applying the Eighth Circuit's "look through" approach to § 1332's amount-in-controversy requirement. In fact, the Court has identified only one decision of a district court in this circuit citing to *CMH Homes. See generally ADT LLC v. Richmond*, No. 4:20-CV-00759-O, 2021 WL 129150 (N.D. Tex. Jan. 8, 2021*), vacated and remanded sub nom. ADT, L.L.C. v. Richmond*, 18 F.4th 149 (5th Cir. 2021). In dismissing a § 4 petition for lack of subject-matter jurisdiction, the *ADT LLC* district court applied the "look through" approach to determine whether there was diversity of citizenship among the parties in the underlying state court action. *ADT*, 2021 WL 129150, at *3-7.[4] The Fifth Circuit reversed and remanded the decision of the district court,

---

[3] The Second Circuit has joined the Fifth Circuit in expressly rejecting the extension of the "look through" approach beyond federal-question jurisdiction. *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 324 (2d Cir. 2017) (declining to extend the "look through" approach to defining the diversity of citizenship; holding that a court assessing its jurisdiction over an FAA petition is to 'look[] only to the citizenship of the parties in the action before it'") (quoting *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 446 (2d Cir. 1995)).

[4] There, an ADT customer filed a state court suit against ADT and an ADT employee asserting various state law claims. *ADT*, 2021 WL 129150, at *3-7. Rather than removing the state court suit, ADT filed a new federal action without the non-diverse employee, petitioning to compel arbitration under FAA § 4 of the plaintiff's state court claims and asserting diversity jurisdiction. *ADT*, 2021 WL 129150, at *2. The district court concluded "the Fifth Circuit's case law urges that *Vaden*'s look-through approach extends to the requirements for diversity jurisdiction." *ADT*, 2021 WL 129150, at *6. The district court looked through the § 4 petition to compel arbitration to the state court action and determined that the parties to the actual, underlying controversy included the non-diverse ADT employee. *ADT*, 2021

---

concluding that the text of § 4 of the FAA and the Supreme Court's decision in *Vaden* did not justify extending the "look through" approach to defining the parties to the substantive controversy underlying the § 4 petition. *See ADT*, 18 F.4th at 151-53 (5th Cir. 2021) ("*Vaden* tells us to look to the 'whole controversy,' not just the petition to compel arbitration, to define the controversy over which the petition asserts federal jurisdiction. The district court went a step further: It applied *Vaden*'s look-through test to define the 'parties' to that controversy. That was error[.]"). As such— even assuming *arguendo* the text of § 4 was relevant to actions to stay, rather than compel, arbitration—the Court declines to adopt the Eighth Circuit's novel approach in *CMH Homes*. Thus, the Court will look only to the controversy between the parties that is actually before it in determining whether § 1332's amount-in-controversy requirement is satisfied.

## B.   The Value of the Controversy before the Court

Having declined to apply *Vaden*'s "look through" approach here, the Court turns to the question of how to value the controversy before it. In seeking to stay the on-going arbitration proceedings, Plaintiff is not seeking to prevent Defendant from arbitrating their claims entirely. Instead, Plaintiff is seeking declaratory judgment and injunctive relief relating *solely* to arbitration over the Agreement's *class action waiver*. Indeed, Plaintiff moved to compel Defendants to arbitrate their individual claims in the Washington proceeding. Thus, the controversy in this case is limited to (1) the enforceability of the Agreement's class action waiver and (2) whether the arbitrators have jurisdiction to rule on that issue. (*See* ECF No. 6, pg. 8).[5]. The Court concludes

---

WL 129150, at *6. Accordingly, the district court dismissed the petition to compel arbitration for lack of subject-matter jurisdiction because there was not complete diversity among the parties. *ADT*, 2021 WL 129150, at *7.

[5] The Amended Complaint's requested relief does not implicate Defendants' individual claims under Washington state law. The Amended Complaint states:

WHEREFORE, JPAY respectfully requests that this Court:

---

that Plaintiff has not met its burden of showing that "the value of the right to be protected or the extent of the injury to be prevented" by its requested declaratory and injunctive relief related to the class action waiver meets § 1332's amount-in-controversy requirement. *St. Paul Reinsurance Co.*, 134 F.3d at 1253.

Plaintiff's first argument that the amount-in-controversy requirement is satisfied turns on the value of Defendants' individual state law claims in arbitration. Plaintiff argues that Defendants' individual claims exceed $75,000 because Defendants each seek attorney's fees and treble damages under Washington state law. (ECF No. 32, pg. 7). The Court is unpersuaded by this argument for two reasons. First, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Leininger v. Leininger*, 705 F.3d 727, 729 (5th Cir. 1983). The object of the litigation before the Court is limited to the Agreement's class action waiver, and the value of Defendants' individual

---

A.    Declare that the arbitrator does not have the power to determine the enforceability of the class action waiver;

B.    Declare that the Agreement's class action waiver is enforceable;

C.    Declare that Defendants are precluded from pursuing class action claims and must submit to individual arbitration; [and]

D.    Stay the two arbitration proceedings: *Lonnie Burton #978598 v. JPay LLC,* Case No. 01-22-0000-3052 and *Michael Linear # 847176 v. JPay LLC*, Case no. 01-22-0000-3053;

E.    Award JPay attorney's fees and costs pursuant to the Agreement, which provides that "[t]he cost of proceedings [challenging the class action waiver] . . . including, without limitation, each party's attorneys' fees and costs, shall be born by the unsuccessful party. Exhibit 1 ¶ 9(h); and

G.    Award JPay other and further relief as may be proper.

(ECF No. 6, pg. 8). The Court notes that, while Plaintiff requests a stay of the arbitration proceedings, Plaintiff states in the Amended Complaint that "[t]his is an action to say the arbitration proceedings pending this Court's determination of whether the Agreement's class action waiver is enforceable." (ECF No. 6, pg. 7). Thus, the value of Plaintiff's individual state law claims in arbitration is not related to "the object of the litigation." *Leininger*, 705 F.3d at 729.

---

MEMORANDUM OPINION AND ORDER                                        Page **14** of 26

claims under Washington state law are not related to the class action waiver. Thus, the potential value of Defendants' individual claims under state law are not relevant to the amount-in-controversy issue.

Second, the authorities to which the Plaintiff cites in support of its argument that the Court should consider treble damages and attorney's fees in determining the amount in controversy are inapposite. Those cases did not involve actions to stay arbitration; instead, they involved motions to remand where the state law claims for which the plaintiffs were entitled to seek attorney's fees and treble damages were before a federal court. *See Theriot*, 354 F. Supp. 3d at 718-22 (concluding that the amount-in-controversy requirement was met because the claims before the court via the removal of a state court action included Texas state law claims that entitled plaintiffs to seek attorney's fees and treble damages); *Segar v. Allstate Fire & Cas. Ins. Co.*, No. C21-1526JLR, 2022 WL 102035, at *4 (W.D. Wash. Jan. 11, 2022) (considering motion to remand where the state court action, and thus the action before the federal court, involved Washington state law claims that entitled plaintiffs to seek treble damages); *Thayer v. Depositor Ins. Co.*, No. 3:12-cv-05569-RJB, 12884879, at *3 (W.D. Wash. 2012) (considering a motion to remand where the state court action, and thus the action before the federal court, involved Washington state law claims that entitled plaintiffs to seek attorney's fees). This case does not involve a motion to remand, and Defendants' individual Washington state law claims are not before this Court. Accordingly, the Court concludes that it would be inappropriate to look to the potential value of Defendants' individual claims under Washington state law in determining the amount in controversy, especially considering that the controversy before this Court is limited to the Agreement's class action waiver.

The only cases Plaintiff cite to the Court involving actions to stay on-going arbitration are

---

not helpful in determining the amount in controversy in this case. Plaintiff cites to the Fifth Circuit's decision in *Webb v. Investacorp*, 89 F.3d 252 (5th Cir. 1996), in support of the proposition that "the amount in controversy for a claim for declaratory relief or an injunction that challenges an arbitrator's jurisdiction under an arbitration provision is . . . determined by the amount of potential award in the underlying arbitration provision." (ECF No. 32, pg. 4) (citing *Webb*, 89 F.3d at 256-57). The Fifth Circuit in *Webb* addressed the question of how to value a party's right "not to submit a dispute to arbitration." 89 F.3d at 256. The Fifth Circuit concluded that § 1332's amount-in-controversy requirement was met because the amount demanded in the underlying arbitration proceeding exceeded the jurisdictional minimum. *Webb*, 89 F.3d at 257. The plaintiffs in *Webb* sought: (1) a declaratory judgment that their contract with the defendant did not require them to arbitrate whatsoever; and (2) an injunction prohibiting the defendant from pursuing any of its contract claims in arbitration. *Webb*, 89 F.3d at 255.

However, because the *Webb* plaintiffs sought a ruling from the district court that the defendant could not arbitrate its claims at all, *Webb*'s analysis was more straightforward that the analysis here. The defendants in *Webb* expressly demanded an amount in arbitration in excess of the jurisdictional minimum. *Webb*, 89 F.3d at 255 (defendants demanded $75,000 in arbitration, which exceeded § 1332(a)'s jurisdictional minimum, which as $50,000 at the time).[6] Thus, the value of the plaintiffs' action to prevent arbitration altogether was easily valued at the amount the defendant demanded in arbitration. *Webb*, 89 F.3d at 256. Here, however, Plaintiff is not seeking to stay the entirety of Defendants' proceedings. Instead, Plaintiffs' claims are limited to just one aspect of those arbitration proceedings—the Agreement's class action waiver. Plaintiff insists the

---

[6] Congress amended § 1332(a) in 1996, increasing the amount-in-controversy requirement from $50,000 to $75,000. *See* Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, § 205(a), 110 Stat 3847 (Oct. 19, 1996) (amending 18 U.S.C. § 1332(a)).

---

Defendants are required to arbitrate its individual claims. Thus, the amount Defendants demand for their individual claims is not relevant to the actual controversy before this Court over the Agreement's class action waiver, and—unlike the Fifth Circuit in *Webb*—the Court cannot determine the value of the right to avoid arbitration by simply looking to the amount demanded in arbitration.

Plaintiff also cite to *Harmon Const., LLC v. J.R. Heineman & Sons, Inc.*, No. CIV.A. 09-6556, 2009 WL 4348686 (E.D. La. Nov. 24, 2009), and *Alonzo v. Harden Home Health, LLC*, No. 1:18-cv-694-RP, 2018 WL 6262957 (W.D. Tex. Sept. 19, 2018). (ECF No. 32, pg. 4). These district court cases are similarly distinguishable from the case at hand. In *Harmon*, a plaintiff filed a suit for declaratory judgment and injunctive relief, seeking to halt arbitration proceedings because it believed that the arbitration provision at issue was unlawful. 2009 WL 4348686, at * 1. The district court concluded that the amount-in-controversy requirement was met because the defendant's arbitration demand was for $279,090.25—far in excess of the jurisdictional minimum. *Harmon*, 2009 WL 4348686, at *2. In *Alonzo*, a plaintiff filed a state court lawsuit seeking to stay on-going arbitration proceedings, arguing that the contract at issue did not mandate arbitration. 2018 WL 6262957, at *1. The defendant removed the suit to federal court, and the plaintiff filed a motion to remand, arguing the federal court lacked subject-matter jurisdiction. *Alonzo*, 2018 6262957, at *1. While there was no explicit monetary demand in the arbitration proceedings at issue in *Alonzo*, the district court concluded the amount-in-controversy requirement was satisfied because the defendant offered evidence that the value of the underlying arbitration was approximately $900,000—again, far in excess of the jurisdictional minimum. *Alonzo*, 2018 6262957, at *3.

Unlike in those cases, the value of the controversy before the Court cannot be determined

by looking to the amount of money at issue in Defendants' individual arbitration proceedings. In *Webb*, *Harmon*, and *Alonzo*, the question before the respective courts was whether the plaintiffs were required to arbitrate the entirety of their underlying disputes against the defendants. *See Webb*, 89 F.3d at 255 ("[Plaintiffs] sought a declaratory judgment that the contracts between themselves and [defendants] did not require them to arbitrate disputes with [defendants.]"); *Alonzo*, 2018 WL 6262957, at *3 ("[Plaintiff] filed suit in state court, seeking declaratory relief and an order enjoining [defendant's] arbitration claims against her."); *Harmon*, 2009 WL 4348686, at *1 ("Plaintiff believes that [Louisiana state law] renders the arbitration contract unlawful. Defendant disagrees and believes that arbitration should be conducted in accordance with the arbitration provision."). Thus, the value of those actions was tied to the money at stake in the underlying arbitration proceedings and could easily be determined by the courts. Here, the monetary values of Defendants' individual claims are not relevant to the controversy before this Court because Plaintiff is not asking this Court for declaratory and injunctive relief preventing Defendants from arbitrating those claims. Thus, Plaintiff must establish that the value of their requests of declaratory and injunctive relief relating solely to the class action waiver exceeds the jurisdictional minimum. The Court concludes Plaintiff has failed to do so.

With respect to the class action question, Plaintiff contends that the Defendants seek to represent a class that includes every incarcerated individual who has used Plaintiff's service in Washington since 2016. (ECF No. 32, pgs. 10-11). According to Plaintiff, the Court should look to the potential aggregate value of a theoretical suit in which Plaintiff must litigate against such a class because "the amount in controversy element should be measured by the value of the underlying claim and 'the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought.'" (ECF No. 32, pg. 10) (quoting *Rasberry*, 609 F. Supp. 2d at 601

(quoting, in turn, S.Rep. No. 109-14, at 43, 2005 U.S.C.C.A.N. at 41)). Thus, according to Plaintiff, "'the jurisdictional amount in controversy is satisfied' by looking at 'the value of all potential class members' underlying [] claims amount.'" (ECF No. 32, pg. 5) (quoting *Rasberry*, 609 F. Supp. 2d at 601-02). However, there is no putative class before the Court and, as discussed above, the Court concludes it would be inappropriate to "look through" both the pleadings before the Court and the arbitration proceedings to the putative class in the original Washington state court litigation.

The case on which Plaintiff relies in support of its argument that the Court should look to "the value of all relief and benefits that could logically flow from granting" the requested relief is inapposite. In *Rasberry,* a court in the Eastern District of Texas considered a motion to remand in a case that was removed from state court. 609 F. Supp. 2d at 598. There, the plaintiff sought, *inter alia*, declaratory and injunctive relief on behalf of a putative class, alleging that an insurer systematically and improperly handled policy holders' claims. *Rasberry*, 609 F. Supp. 2d at 601. In moving to remand the case back to state court, the plaintiff argued that the amount-in-controversy requirement was not met because her class action petition did not seek monetary recovery. *Rasberry*, 609 F. Supp. 2d at 600. The district court noted that "[t]he nature of the relief sought . . . implicates class members' ability to enforce their contracts[.]" *Rasberry*, 609 F. Supp. 2d at 601. Thus, the court concluded that the amount in controversy could be determined by aggregating the values of the putative class members' insurance claims under the Class Action Fairness Act. *Rasberry*, 609 F. Supp. 2d at 601; *see also Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) ("CAFA expanded federal district courts' original jurisdiction to include "'class actions" and "mass actions"' in which there is minimal diversity and the aggregate amount in controversy exceeds $5 million.") (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.,* 571 U.S. 161, 165 (2014)).

No party has invoked—as a basis for jurisdiction—the Class Action Fairness Act, which allows for the aggregation of claims under § 1332. Unlike in *Rasberry*, there is no putative class in the case before the Court. Plaintiff has sued Defendants individually and not as class action defendants, which is authorized under the Federal Rule of Civil Procedure. *See Kerney v. Fort Griffin Fandangle Ass'n, Inc.*, 624 F.2d 717, 721 (5th Cir. 1980) ("Both rules 23 and 23.2 expressly contemplate the possibility of defendant class actions and require that the representative parties fairly and adequately protect the interest of the class members."). Plaintiff expressly concedes that CAFA is not alleged as a basis for jurisdiction in the Amended Complaint. (ECF No. 32, pg. n. 5). Courts may aggregate class claims only because § 1332(d)(6) specifically authorizes them to do so. *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 n. 10 (5th Cir. 2006) ("Unlike with § 1332(a), CAFA explicitly allows aggregation of each class member's claim.") (citing 28 U.S.C. § 1332(d)(6)). Thus, without CAFA as a jurisdictional basis for this action, the rational for looking to the "value of all relief and benefits that could logically flow from the granting of the declaratory relief sought" is not present in this case. *Rasberry*, 609 F. Supp. 2d at 601 (citing to the congressional history of the Class Action Fairness Act).

Moreover, Defendants are not seeking class arbitration in their respective arbitration proceedings. (*See* ECF No. 6-5, pg. 2; ECF No. 6-6, pg. 2) ("Claimant seeks to invalidate the arbitration and class action waiver in this consumer arbitration. Claimant does not seek class arbitration, however[.]"). Consequently, Plaintiff is not attempting to prevent class arbitration in the proceedings at issue. (*See* ECF 6, pg. 8). Instead, Defendants are seeking a ruling on the class action waiver, which could—*in the future*—lead to a theoretical class action if invalidated by one of the arbitrators. Thus, the theoretical class Plaintiff posits—all users of Plaintiff's services in the State of Washington—is before neither this Court nor the arbitrators.

The existence of a putative class is contingent on whether the arbitrators invalidate the class action waiver. If the Court were to determine the amount in controversy in this case by aggregating the claims of an unknown class of persons—persons who may not bring claims as a class unless the arbitrators invalidate the class action waiver—the Court would be effectively rendering an opinion about that hypothetical class on hypothetical facts. Such an opinion would run afoul of the well-established constitutional prohibition on advisory opinions. *See Hodgson v. H. Morgan Daniel Seafoods, Inc.*, 433 F.2d 918, 920 (5th Cir. 1970) (federal courts "cannot render an advisory opinion on hypothetical or abstract facts") (citing *Bell v. State of Maryland*, 378 U.S. 226, 237 (1964)) (additional citations omitted). The rule against advisory opinions "seeks to ensure that federal courts determine specific disputes between the parties, rather than hypothetical legal questions, and in doing so, conserve judicial resources." *Texas v. Travis Cty.*, 272 F. Supp. 3d 973, 980 (W.D. Tex. 2017) (citing *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968)), *aff'd*, 910 F.3d 809 (5th Cir. 2018). Neither the specific dispute between the parties before this Court nor the specific dispute between the arbitrators involves a putative class. As such, the Court declines to render an advisory opinion on the value of the aggregated claims of a contingent, theoretical class and pretermits any discussion of that potential class of persons in determining the amount in controversy in this case.

For the foregoing reasons, the Court concludes that Plaintiff has not met its burden to establish that the Court has subject-matter jurisdiction in this case. *See St. Paul Reinsurance Co.*, 134 F.3d at 1253. The controversy before this Court is limited to the Agreement's class action waiver. Because (1) Plaintiff's requested declaratory and injunctive relief are limited solely to the Agreement's class action waiver and (2) Plaintiff is not seeking to prevent Defendants from arbitrating their individual claims, the value of those individual claims is not relevant to the amount

in controversy before this Court. Moreover, because there is no putative class before this Court, it would be inappropriate for the Court to value Plaintiff's claims for declaratory and injunctive relief by looking to the "value of all relief and benefits that could logically flow from the granting of the . . . relief sought." *See Rasberry*, 609 F. Supp. 2d at 601. Finally, because the Defendants are not seeking class arbitration in the underlying proceedings, aggregating the claims of a contingent, theoretical, and hypothetical class would constitute an inappropriate advisory opinion. Under these circumstances, the Court must conclude that Plaintiff has not met its burden to show that § 1332's amount-in-controversy requirement has been met.

## C.    Leave to Amend

In a footnote in its Supplemental Briefing, Plaintiff requests "if this Court finds that jurisdiction *only* exists under CAFA, JPAY should be given the opportunity to amend its pleadings, and respectfully requests the opportunity to do so pursuant to 18 U.S.C. § 1653." (ECF No. 32, pg. 9 n. 5) (emphasis in original) (citing *Whitmire v. Victus Ltd.*, 212 F.3d 885 (5th Cir. 2000) (remanding case to allow plaintiff to amend defective jurisdictional allegations under 28 U.S.C. § 1653, which states: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.")). The Court declines to afford Plaintiff an opportunity to amend.

"Except as authorized by the first sentence of [the Federal Rules of Civil Procedure Rule] 15(a) for one amendment before service of a responsive pleading, a complaint may be amended only by leave of the district court." *United States ex rel. Willard v. Human Health Plan of Tex., Inc.,* 336 F.3d 375, 387 (5th Cir. 2003). "Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir.2005)). "The district court is entrusted

with the discretion to grant or deny a motion to amend[.]" *Marucci Sports*, 751 F.3d at 378. In

deciding whether to grant or deny a motion to amend, the Court "may consider a variety of factors

including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . ,

and futility of the amendment.'" *Marucci Sports*, 751 F.3d at 378 (internal citation omitted); *see

also, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (enumerating the same). Courts may also

deny leave to amend if the proposed amendments "would fundamentally alter the nature of the

case." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (citing

*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 n. 2 (5th Cir. 1997))

Plaintiff has not provided the Court a proposed amended complaint. *See* N.D. Tex. L.R.

15.1 ("When a party files by electronic means a motion for leave to file an amended pleading, *the

party must attach the proposed the pleadings to the motion as an exhibit.*") (emphasis added); *(see

generally* ECF No. 32). As such, the Court is unaware of the particular grounds for the amendment,

aside from Plaintiff's general request to amend "if this Court finds that jurisdiction *only* exists

under CAFA[.]" (ECF No. 32, pg. 9 n. 5). The Fifth Circuit has explained:

> Rule 15(a) applies where plaintiffs "expressly requested" to amend even though
> their request "was not contained in a properly captioned motion paper." *Balistreri
> v. Pacifica Police Dep't,* 901 F.2d 696, 701 (5th Cir.1988). **A formal motion is not
> always required, so long as the requesting party has set forth with particularity
> the grounds for the amendment and the relief sought.** Fed. R. Civ. P. 7(b)(1),
> 15(a); *Edwards v. Occidental Chemical Corp.,* 892 F.2d 1442, 1445–46 (9th
> Cir.1990). "[A] bare request in an opposition to a motion to dismiss—without any
> indication of the particular grounds on which the amendment is sought, *cf.*
> Fed.R.Civ.P. 7(b)—does not constitute a motion within the contemplation of Rule
> 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C.Cir.1993).

*U.S. ex rel. Willard*, 336 F.3d at 387 (emphasis added) (concluding the district court did not abuse

its discretion in not allowing the relator to amend his complaint because: (1) the relator "did not

expressly request with particularity the opportunity to amend his complaint;" (2) the relator

"repeatedly failed to cure deficiencies by amendments previously allowed;" and (3) amendment would be futile).

Plaintiff has not "expressly requested with particularity the opportunity to amend." *U.S. ex rel. Willard*, 336 F.3d at 387. Given the Fifth Circuit's holding in *U.S. ex. rel. Willard*, and this Court's local rule requiring that requests for leave to amend be accompanied with the proposed amended pleadings, it is within the Court's discretion to deny leave. *See U.S. ex rel. Willard*, 336 F.3d at 387; N.D. TEX. L.R. 15.1. Additionally, the Court would decline to grant leave to amend because any amendment to include claims under the Class Action Fairness Act would either be futile or would fundamentally alter the nature of the case.

With respect to federal jurisdiction under the Class Action Fairness Act, the Supreme Court has explained:

> CAFA provides the federal district courts with "original jurisdiction" to hear a "class action" if the class has more than 100 members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(5)(B)). To "determine whether the matter in controversy" exceeds that sum, "the claims of the individual class members shall be aggregated." [28 U.S.C.] § 1332. And those "class members" include "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." [28 U.S.C.] § 1332(d)(1)(D) (emphasis added).

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Accordingly, to determine whether the amount in controversy in a class action is sufficient for federal jurisdiction, district courts "add[] up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether that sum exceeds $5 million." *Standard Fire Ins. Co.*, 568 U.S. at 592.

"Federal courts have . . . long permitted plaintiffs to move move for certification of a defendant class after suing a putative class of representatives." *Mary Kay Inc. v. Reibel*, 327 F.R.D. 127 (N.D. Tex. 2018); FED. R. CIV. P. 23(a) ("One or more members of a class may so *or be sued*

as representative parties on behalf of all members.") (emphasis added). Plaintiff appears to request leave to amend its complaint to allege a putative class of representative defendants. However, there is no proposed amended complaint before the Court, so the Court has no notice of what that proposed putative class might be. From what the Court can deduce, there are two possibilities for amendment of Plaintiff's pleadings to invoke CAFA as a basis for jurisdiction. Plaintiff could seek to assert class action claims against either (1) a putative class that includes only the named defendants in this case or (2) a putative class that includes unnamed Washington state inmates that use Plaintiff's services. The former amendment would be futile; the latter amendment would fundamentally alter the nature of the case. Neither justify granting leave to amend.

Amending the Amended Complaint to propose a putative class that includes the two named defendants in this case would be futile. Aggregated claims must exceed $5 million to satisfy CAFA's amount-in-controversy requirement. *See* 28 U.S.C. § 1336(d)(6). Defendants' demand $50,000 in arbitration. Even if the Court were to consider treble damages and attorneys' fess in determining the value of Defendants individual arbitration claims as Plaintiff requests, an aggregation of the two named defendants' individual claims would fall far below CAFA's amount-in-controversy requirement.

Alternatively, an amended complaint alleging claims against an expansive putative class that includes an unknown number of Washington state inmates would "fundamentally alter the nature of the case." *Mayeaux*, 376 F.3d at 427. Plaintiff invokes 28 U.S.C. § 1653 in requesting an opportunity to amend. (ECF No. 32, pg. 9 n. 5). Section 1653 states that "[d]effective allegations may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Under § 1653, "district court[s] can 'remedy inadequate jurisdictional allegations,' [but] cannot 'remedy defective jurisdictional facts.'" *Whitmire*, 212 F.3d at 888 (quoting *Newman—Green, Inc.. v.*

---

*Alfonzo—Larrain*, 490 U.S. 826, 831, 832 n. 4 (1989)). The Fifth Circuit has explained:

> The danger against which a court must guard is that a party will attempt to use §
> 1653 to retroactively create subject[-]matter jurisdiction. *See* MOORE ET AL.,
> MOORE'S FEDERAL PRACTICE § 15.14[3], at 15–34 (3d ed. 1999)
> ("Essentially, a plaintiff may correct the complaint to show that jurisdiction does in
> fact exist; however, if there is no federal jurisdiction, it may not be created by
> amendment.").

*Whitmire*, 212 F.3d at 888. Plaintiff's case, as currently pled, is limited to (1) the enforceability of

the Agreement's class action waiver, and (2) whether the arbitrators in Defendants' respective

arbitration proceedings have the jurisdiction to determine that issue. The Court concludes that

allowing Plaintiff to allege, for the first time, an expansive putative class of Washington state

inmates, who Plaintiff has not alleged to have been involved in arbitration proceedings, would

"fundamentally alter the nature of the case," *Mayeaux*, 376 F.3d at 427, and "retroactively create

subject[-]matter jurisdiction." *Whitmire*, 212 F.3d at 888. Under these circumstances, the Court

denies Plaintiff's request for leave to amend its pleadings.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it does not have subject-matter

jurisdiction in the case. Accordingly, this case is hereby **DISMISSED** without prejudice.

    **SO ORDERED:** August 15, 2023.

 

Ada Brown
UNITED STATES DISTRICT JUDGE